UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VISION INFORMATION TECHNOLOGIES,
INC.,

Case No. 15-10592

Plaintiff,

Honorable Nancy G. Edmunds

v.

VISION IT SERVICES USA, INC. and
SRINIVASARAO NIMMAGADDA,

Defendants.

_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON LIABILITY [15] AND DENYING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [18]**

This trademark infringement action comes before the Court on Plaintiff Vision
Information Technologies, Inc.'s  ("Plaintiff" or "Vision Information") Motion For Partial
Summary Judgment As To Defendants' Liability For Trademark Infringement And Unfair
Competition (docket no. 15) and Defendants Vision IT Services USA, Inc., and Srinivasarao
Nimmigadda's[1] Motion For Judgment Under Federal Rules Of Civil Procedure Rule 56 (dkt.
no. 18). Plaintiff brings the following claims: Federal trademark infringement pursuant to 15
U.S.C. § 1114 (Count I), federal unfair competition/false designation of origin pursuant to
15 U.S.C. § 1125(a) (Count II),  common law unfair competition (Count III), and common
law trademark infringement (Count IV).

_____

   [1] Plaintiff spells Defendant's name "Nimmagadda" and thus, it appears that way in the
caption. However, in their own pleadings, Defendants spell it "Nimmigadda." Defendants'
spelling is used throughout the opinion, while keeping the case caption consistent with the
docket.

For the reasons stated below, Plaintiff's motion for partial summary judgment on liability is granted and Defendants' motion for summary judgment is denied.

## I.   Facts

Plaintiff Vision Information Technologies, Inc., was founded in 1997, it began using the mark VISIONIT when it was formed, and it has continuously used the mark since then. (Pl.'s St. Of Undisputed Material Facts dkt. no. 16, Ex. D, Segura Decl. ¶¶ 3, 4.) Plaintiff has "delivered a broad spectrum of information technology services to customers across the globe since 1997. These services include technical staffing." (*Id.*, Segura Decl. ¶ 4.) Plaintiff registered the domain name www.visionit.com on September 20, 1998 and since that time has advertised its services on its website. (Segura Decl. ¶ 5.) Plaintiff provided screenshots of its website from 2001 and 2002, showing the VisionIT mark at the top of the page. (Segura Decl. ¶¶ 6, 7; Exs. E, F.)  In 2001, Plaintiff filed a Certificate of Assumed Name for VISIONIT with the Michigan Department of Consumer & Industry Services, Bureau of Commercial Services, Corporation Division. (Segura Decl. ¶ 9, Ex. H.) On November 25, 2008, the United States Patent and Trademark Office issued the VISIONIT Registration to Plaintiff. (Pl.'s St. Of Undisputed Material Facts, Ex. B, Foley Decl. ¶ 5; Ex. A, Certificate of Registration of VISIONIT.) Plaintiff's mark has been renewed and has not been cancelled. (Foley Decl. ¶¶ 6, 7; Ex. C.)  In October 2014, Plaintiff formed three wholly-owned subsidiaries who have licensed the VISIONIT trademark. (Segura Decl. ¶ 10.)

The Registration shows that Plaintiff's mark VISIONIT is registered in International Classes 35 and 42. For each class, the certificate of registration shows first use was 6-2-1997 and in commerce was 6-2-1997. (Pl.'s St. Of Undisputed Material Facts, Ex. A.) The certificate of registration includes these services in International Class 35:

> FOR: EMPLOYMENT HIRING, RECRUITING, PLACEMENT, STAFFING AND
> CAREER NETWORKING SERVICES; EMPLOYMENT STAFFING IN THE
> FIELD OF INFORMATION TECHNOLOGY; PROVIDING AN ON-LINE
> SEARCHABLE DATABASE FEATURING EMPLOYMENT OPPORTUNITIES;
> OUTSOURCING IN THE FIELD OF INFORMATION TECHNOLOGY;
> BUSINESS MANAGEMENT SERVICES, NAMELY, MANAGING THE SUPPLY
> OF CONTRACTED EMPLOYEES FOR OTHERS; BUSINESS SERVICES,
> NAMELY, MANAGING THIRD PARTY VENDORS, SUPPLIERS, AND
> CONTRACTORS ON BEHALF OF OTHERS;   ADMINISTRATION OF
> BUSINESS PAYROLL FOR OTHERS, IN CLASS 35 (U.S. CLS. 100, 101 AND
> 102).

(Pl.'s St. Of Undisputed Material Facts, Ex. A.) It includes these services in International

Class 42:

> FOR: WEB SITE DEVELOPMENT AND CONTENT MANAGEMENT FOR
> OTHERS; DESIGN, CREATION, HOSTING, MAINTENANCE OF WEB SITES
> FOR OTHERS; COMPUTER SERVICES, NAMELY, WEB BASED
> APPLICATION ENHANCEMENT; COMPUTER SERVICES, NAMELY,
> COMPUTER SYSTEM ADMINISTRATION FOR OTHERS; COMPUTER
> CO-LOCATION SERVICES, NAMELY, PROVIDING FACILITIES FOR THE
> LOCATION OF COMPUTER NETWORK, SERVER, STORAGE, AND
> PRINTER SYSTEMS; APPLICATION SERVICE PROVIDER, NAMELY,
> PROVIDING, HOSTING, MANAGING, DEVELOPING, AND MAINTAINING
> APPLICATIONS, SOFTWARE, WEB SITES, AND DATABASES FOR
> OTHERS; COMPUTER TECHNOLOGY SUPPORT SERVICES, NAMELY,
> HELP DESK SERVICES; TECHNICAL SUPPORT SERVICES, NAMELY,
> TROUBLESHOOTING OF COMPUTER HARDWARE AND SOFTWARE
> PROBLEMS; MANAGING COMPUTER NETWORK OPERATIONS FOR
> OTHERS, IN CLASS 42 (U.S. CLS. 100 AND 101).

(*Id.*)

Defendant Vision IT Services USA, Inc., is a Michigan corporation based in

Farmington Hills, Michigan. (Defs.' Answer ¶ 3.) Defendants began using the name VISION

IT SERVICES USA, INC., no earlier than 2004. (Defs.' Answer to Interrog. nos. 7, 8, Pl.'s

Ex. J.) Defendant Mr. Nimmigadda, is the registrant of the Internet domain name

www.visionitusa.com. (Defs.' Answer ¶ 20.) Defendants operate within the IT labor

business, as does Plaintiff. (Defs.' Resp. 1.) In their answer, Defendants admitted that

Vision IT Services USA, Inc., engages in those services listed in Trademark Registration International Class no. 35, set forth above. (Defs.' Answer ¶ 16.)

Plaintiff alleges that the services offered by Defendants are identical to those offered by Plaintiff and that Defendants had notice of Plaintiff's prior rights in the mark, yet adopted and used the term "VISION IT" within the State of Michigan and in interstate commerce, including by offering consulting services and employment services. Plaintiff filed its suit on February 17, 2015, seeking the following relief:

> 1) That the Court enjoin Defendants from using the term "VISION IT" or any confusingly similar designation or otherwise causing a likelihood of confusion, injury to business reputation or dilution of Plaintiff's Mark;
>
> 2) That the Court direct Defendants to file with the Court and serve on Plaintiff within 30 days after an injunction, a "report in writing under oath, setting forth in detail the manner and form in which the Defendants complied with the injunction";
>
> 3) That the Court direct Defendants to deliver or destroy all devices, literature, advertising, or other materials bearing the designation "VISION IT";
>
> 4) That Defendant Vision IT Services USA, Inc., change its name with the Michigan Department of Licensing and Regulatory Affairs;
>
> 5) That Defendants cease using the term "VISION IT" as an internet address, portion of an internet address, metatag or other designation on the internet;
>
> 6) That Defendant Nimmigadda transfer the domain www.visionitusa.com to Plaintiff;
>
> 7) That Plaintiff be awarded damages consisting of all profits made by Defendants as a result of using the term "VISION IT";
>
> 8) That Plaintiff be awarded enhanced damages of three times its actual damages and a reasonable attorney's fee under 15 U.S.C. § 1117;
>
> 9) That Plaintiff be awarded exemplary damages under Michigan state law;
>
> 10) That Plaintiff recover its costs of this suit;

11) That Plaintiff recover its attorneys' fees, this case being exceptional; and

12) That Plaintiff have such other and further relief to which it may be entitled.

On October 1, 2015, Plaintiff filed a motion for partial summary judgment on the issue of liability (dkt. 15) and Defendants filed a motion for summary judgment (dkt. no. 18). Both motions are considered herein.

## II.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Rule 56 also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

## III.  Analysis

### A. Defendants' Motion For Summary Judgment:  Whether Plaintiff's Claims Are Barred By The Doctrine of Laches

Defendants' motion for summary judgment raises a single argument: Plaintiff's claims are barred by the doctrine of laches. "A party asserting laches much show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002). "In evaluating whether a party has been diligent in protecting its trademark, we look to the state-law statute of limitations for injury to

personal property," which is three years under Michigan law. *Id.* "[A] delay beyond the three-year statutory period is presumptively prejudicial and unreasonable." *Id.*

Defendant Nimmigadda started the business Vision IT in 2004. Defendants assert that in 2008, Defendant Nimmigadda "allowed the name registration [with the State] to lapse and Plaintiff came in and secured the name, Vision IT Services, Inc., thereby forcing [Defendant] Nimmigadda to name his company Vision IT Services USA, Inc." (Defs.' Br. 1.) Defendants further allege:

> Also in 2008 Defendant, Nimmigadda, received correspondence from Clark Hill, as attorney for Plaintiff, Vision Information Technologies, Inc., demanding that Defendant cease and desist from using any form of the name Vision IT. Defendant, Nimmigadda, contacted Clark Hill and talked to someone at Clark Hill, but is unable to remember exactly who he spoke to at the time. After the conversation with the attorney at Clark Hill, Defendant, Nimmigadda, continued to use the name Vision IT Services USA, Inc. without incident until Defendant received another letter from Clark Hill on December 16, 2014 again raising the issue of Defendants' use of the name Vision IT.

(Defs.' Br. 2 and Ex. A, Nimmagadda Dep. 11-12.)

As Plaintiff correctly points out, laches is an affirmative defense and under the Federal Rules of Civil Procedure, it must be affirmatively stated. Fed. R. Civ. P. 8(c)(1). This district has reaffirmed the need to not only state the defenses, but to state them in an "intelligible manner," which "requires more than just boilerplate affirmative defenses." *Rehab Solutions, Inc. v. St. James Nursing and Physical Rehab. Ctr., Inc.*, 2014 WL 6750590, at *2 (E.D. Mich. Dec. 1, 2014) (Drain, J.); *see generally* 5 Charles Alan Wright, et al., 5 Federal Practice and Procedure § 1278 (3d ed. 2015) ("It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by

Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case, . . . .); *see also Horton v. Potter*, 369 F.3d 906, 911-12 (6th Cir. 2004). Defendants admit that they did not raise laches as an affirmative defense in their answer. (Defs.' Resp. Br. 3.) They argue, however, that they raised the affirmative defense of laches in the Joint Report of the Parties' Rule 26 Planning Meeting that the parties filed with the Court. (Defs.' Resp. Ex. A; dkt. no. 11.)

Even if the defense had been timely raised, Defendants' allegations and supporting evidence lack specificity. Defendants rely on *Nartron Corporation* to raise laches as a defense. *Nartron Corp.,* 305 F.3d 397. In *Nartron*, the Sixth Circuit agreed that the doctrine of laches precluded the plaintiff's claims for trademark infringement. *Id.* at 408. Distinctions between *Nartron* and the case at bar include that in *Nartron*, there was evidence that not only were the plaintiff's aware of defendant's use of the mark, but that defendant "repeatedly informed [the plaintiff] that it had no intension of stopping its use." *Id.*  at 409.  In the case at bar, Defendants' allegations are considerably more vague. They have not been able to provide a copy of the letter they allegedly received and, although Defendant Nimmigadda testified that he received the letter and he called Plaintiff's attorney(s), he does not recall with whom he spoke about the matter and he gives no specific date for either of these occurrences. (Nimmigadda Dep. 11-12.)

Contrary to Defendants' argument that Plaintiff's claims should be barred, this Court has in the past found consistent with the Sixth Circuit that while laches "precludes a plaintiff from recovering damages, it does not bar injunctive relief."

8

*Pond Guy, Inc. v. Aquascape Designs, Inc.*, 2014 WL 2863871 (E.D. Mich. June 24, 2014) (Edmunds, J.) (quoting *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568-69 (6th Cir. 2000)); *see also Nartron*, 305 F.3d at 412 (laches "does not prevent plaintiff from obtaining injunctive relief or post-filing damages," yet because the court found that the mark at issue, "smart power," was generic and not entitled to trademark protection, the court did not need to determine whether "elements of estoppel exist which suffice to preclude [the defendant's] claims for post-filing damages or injunctive relief").

The Court finds that the doctrine of laches does not provide a basis for dismissal of Plaintiff's claims and denies Defendants' motion for summary judgment. The Court determines, however, that there is a basis to allow Defendants to present the affirmative defense of laches on the issue of damages. Plaintiff had notice by way of the Report of Parties' Rule 26 Planning Meeting that Defendants intended to rely on a defense of laches and Defendants also raised laches in their Response to Plaintiff's Motion for Partial Summary Judgment. Plaintiff had the opportunity to address the defense in its own motion for partial summary judgment, and Defendant Nimmigadda testified as to a basis for the defense at his August 25, 2015 deposition, albeit without specificity. (Def.'s Mot. Ex. A.) For this reason, the Court will allow Defendants to present evidence of laches with respect to the issue of damages.

### B.  Plaintiff's Motion For Partial Summary Judgment On Liability

Plaintiff argues that the undisputed facts establish that Plaintiff is the senior user and has the exclusive right to use the VISIONIT mark and that Defendants are infringing. Defendants concede all elements of violation of the Lanham Act or trademark infringement but one, arguing in response that Plaintiff failed to show confusion or likelihood of confusion regarding the name Vision IT. (Defs.' Resp. 4.) Defendants state that they "are not going to attempt to contest the other elements of violation of the Lanham Act or trademark infringement, only the requirement that there be confusion resulting." (Defs.' Resp. 4.)

"The first to use a mark in the sale of goods or services is the 'senior user' of the mark and gains common law rights to the mark in the geographic area in which the mark is used." *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F. 3d 564, 572 (6th Cir. 2001). Evidence of record shows that Plaintiff used the mark first, starting with the formation of its company in 1997, and continuing to present. (Segura Decl. ¶ 3.) Defendants admit in the Complaint that they first used the term VISION IT in July 2004 when they began a new IT business. (Defs.' Answers to Interrog. nos. 7, 8; Pls.' St. of Undisputed Material Facts Ex. J.) There is no genuine issue of material fact as to who has senior rights to the mark. Plaintiff owns the trademark because it used it first. As set forth above, Plaintiff's mark was also registered on the Principal Register in 2008 and renewed in 2014.

The Lanham Act, 15 U.S.C. § 1114, provides that any person is civilly liable who shall, without the consent of the [mark's] registrant:

10

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

15 U.S.C. § 1114(1); *see also Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 512 (2007). "The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Leelanau Wine Cellars, Ltd.,* 502 F.3d at 515 (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997)). The factors to consider in a common law claim under Michigan state law are the same, and the court uses the same likelihood of confusion test. *See Wynn Oil Co. v. American Way Serv. Corp.*, 943 F.2d 595, 604-05 (6th Cir. 1991); *Volkswagen AG v. Dorling Kindersley Publ'g, Inc.*, 614 F. Supp. 2d 793, 801 (E.D. Mich. 2009).

The Sixth Circuit utilizes an eight-factor test in ascertaining whether a likelihood of confusion exists:

(1) strength of the senior mark;

(2) relatedness of the goods or services;

(3) similarity of the marks;

(4) evidence of actual confusion;

(5) marketing channels used;

(6) likely degree of purchaser care;

(7) the intent of defendant in selecting the mark; and

11

(8) likelihood of expansion of the product lines.

*Leelanau Wine Cellars, Ltd.*, 502 F.3d at 515 (citing *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568 (6th Cir. 2000)); *see also Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F. 2d 642, 648 (6th Cir. 1982). "These factors imply no mathematical precision, but are simply a guide to help determine whether confusion is likely." *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). While the Court must attempt an analytical treatment of the factors, "[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id.* In this Circuit, "the question of whether there is a likelihood of confusion [is] a mixed question of fact and law." *Id.*

### 1. Strength Of The Mark

> Only those marks that are "distinctive" as a matter of law are accorded trademark protection. Certain marks, described as "arbitrary," "fanciful," or "suggestive" are "inherently distinctive" and protectable. A so-called "generic" mark may never qualify for trademark protection. Between these two poles lie "descriptive" marks. Marks that are descriptive are not inherently distinctive but may enjoy the benefit of protection if they develop a "secondary meaning."

*Leelanau Wine Cellars, Ltd.*, 502 F.3d at 512-13 (citations omitted). "The strength of a mark is a factual determination of the mark's distinctiveness. A stronger mark is accorded greater protection and encroachment upon a strong mark is deemed more likely to produce confusion among buyers." *Id.* at 515.

12

As Plaintiff points out, the mark VISIONIT is not commonly used as the name of a good or service, nor does it identify a characteristic of the service associated with Plaintiff's business, which involves employment hiring and staffing. *See generally id.* at 513 nn. 4, 5 (defining generic and descriptive words). There is no evidence to the contrary.

"Registration of a mark on the Principal Register of the USPTO creates a rebuttable presumption that a trademark is valid, that is, either inherently distinctive or descriptive with secondary meaning, and therefore, protectable under federal trademark law." *Leelanau Wine Cellars, Ltd.*, 502 F.3d at 513 (citing 15 U.S.C. § 1115(a)). Plaintiff provides a copy of the Certificate of Registration of its service mark, authenticated by the declaration of James R. Foley. (Pls.' St. of Undisputed Material Facts   Ex. A, Ex. B ¶ 4.) Plaintiff is the sole owner of service mark VISIONIT, registration no. 3,536,872 on the principal register, registered November 25, 2008. (Pls.' St. of Undisputed Material Facts ¶¶ 13, 14, 15, Ex. A.) Plaintiff later filed a declaration of use and a declaration of incontestability, both receiving a Notice of Acceptance on October 16, 2014. (*Id.* Ex. B ¶ 8, Ex. C.) The Lanham Act provides that

> To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce.

15 U.S.C. 1115(b) (incontestability; defenses). Incontestability remains subject to several enumerated defenses (for example fraud or abandonment), none of which

13

were plead by Defendants. *See* 15 U.S.C. § 1115(b)(1)-(9). Plaintiff's mark is neither generic nor descriptive and merits protection as a distinctive mark. This factor favors a finding of likelihood of confusion.

### 2. Relatedness of Services

The Sixth Circuit considers the "relatedness of goods" within a "tripartite system." *Leelanau Wine Cellars, Ltd.*, 502 F.3d at 516 (citing *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 798 (6th Cir. 2004)). First, if the parties are in direct competition, then "confusion is likely if the marks are sufficiently similar." *Id.* Second, "If the marks are 'somewhat related, but not competitive,' the likelihood of confusion determination will turn on one of the other seven factors." *Id.* And finally, "[i]f the products are unrelated, a likelihood of confusion is 'highly unlikely.'" *Id.* "Services and goods are related not because they coexist in the same broad industry, but are related if the services are marketed and consumed such that buyers are likely to believe that the services, similarly marked, come from the same source, or are somehow connected with or sponsored by a common company." *Id.* (quoting *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 283-84).

In their answer, Defendants admit Plaintiff's allegation that they perform the following services:

> [H]iring, recruiting, placement, staffing and career networking services; employment staffing in the field of information technology; providing an on-line searchable database featuring employment opportunities; outsourcing in the field of information technology; business management services, namely, managing the supply of contracted employees for others; and business services, namely, managing third party vendors, suppliers and contractors on behalf of others; administration of business payroll for others.

14

(Compl. ¶ 16; Defs.' Answer ¶ 16.)

In their Complaint, Plaintiff alleges that its trademark registration includes services from International Classes 035 and 042, and Plaintiff alleges that it has used the mark to advertise those services described in the registration, the same services which Defendants admitted in their answer that they perform. (Compl. ¶ 9-11.) Plaintiff's services include technical staffing and it has provided "information technology staffing to major corporations and governmental entities for almost 20 years." (Pl.'s St. of Undisputed Material Facts, Ex. D ¶ 4.)

Defendants' responsive argument hinges on the following distinction: "while both companies deal in contract labor for the information technologies business, Plaintiff deals with the ultimate end users, and Defendants exclusively deal with contracting and finding labor abroad. There is no real overlap of the companies' businesses." (Defs.' Resp. 5 citing Nimmigadda Dep. Ex. C.) Defendants argue that they secure the "H1-B's from abroad" while Plaintiff contracts specifically with American employees. (Defs.' Resp. 1.) Mr. Nimmigadda explained that his company brings employees over on green cards. His consultants or employees, "are hired by the middle vendors to work at the client site" [the end client]. (Nimmigadda Dep. 18 at lines 13-22.) "Most of the time there's a layer between [Nimmigadda's company] and the client." (Nimmigadda Dep. 18-19.)  Nimmigadda explained that he finds his clients (the people who pay him) when these "clients post different ads in different websites like Dice, Monster or different job portals where they post job openings." (Nimmigadda Dep. 20.) Defendants then "go there and apply for the jobs." They

15

then have people who apply for those jobs; if the client likes the candidate's resume, the client will call and interview the candidate and the candidate is sent for the different projects which the client has available. (Nimmigadda Dep. 20.)

Plaintiff points out that Defendants operate in Farmington Hills, Michigan, while Plaintiff operates nationwide but has its principal office in Detroit. (Pl.'s Mot. 15.) Plaintiff also provided evidence that indeed, it does process H1B visas for non-citizens of the United States and then deploys those workers on its customers' worksites. (Segura Supplemental Decl. dkt. no. 23-1.)

In this instance, the services are certainly not unrelated. They are nearly identical and they are competitive, or at the very least, related. Defendants have already admitted that they perform those services which are recited in Plaintiff's trademark registration. (Defs.' Answer.) Defendants also admit in the statement of facts in their response brief that "both companies work within the IT labor business."

This factor also favors a finding of likelihood of confusion on behalf of Plaintiff.

### 3. Similarity of Marks

Plaintiff's registered mark is VISIONIT. (Segura Decl. ¶¶ 3-10; Pl.'s Ex. A.) Defendants' company name is Vision IT Services USA, Inc. "Similarity of marks is a factor of considerable weight." *Daddy's Junky Music Stores, Inc.*, 109 F.3d at 283. The first portion of Defendants' company name is Plaintiff's mark, with the addition of a space. Plaintiff shows that in at least one use of Defendants' name the space does not appear. For example, Defendants' website is www.visionitusa.com. (Defs.' Answer ¶ 20.)  Plaintiff points out that a descriptive phrase is not considered in

16

determining whether two marks are similar, for example, Defendants' addition of the geographic descriptor "USA." *See Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 363 (6th Cir. 1984). The Plaintiff's mark and Defendants' Vision IT Services USA, Inc., are almost identical. Again, this factor strongly supports finding a likelihood of confusion.

### 4. Evidence of Actual Confusion

"Evidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *AutoZone, Inc.*, 373 F.3d at 798 (quotation omitted). Plaintiff provides evidence of both initial-interest confusion and actual confusion. Plaintiff relies on *PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243 (6th Cir. 2003) (abrogated on other grounds), for the premise that "[a]n infringing domain name has the potential to misdirect consumers as they search for web sites associated with the owner of a trademark." *Id.* at 253. "This 'initial interest confusion'" is recognized as an infringement under the Lanham Act." *Id.* (citing *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 464 (7th Cir. 2000)). Plaintiff shows that a search for Plaintiff's trademark VISIONIT on bing.com, aol.com and google.com return Defendants' website www.visionitusa.com as the third, sixth and eighth hits, respectively. (Pl.'s St. Of Undisputed Material Facts, Ex. B, Foley Decl. ¶¶ 10-12; Exs. K, L, M.) Plaintiff also shows that on Glassdoor, www.glassdoor.com, an American website where companies and their management are reviewed by former and current employees, a "screen shot of the demographics of candidates who looked at Plaintiff's company's profile on Glassdoor shows that candidates who visit Plaintiff's profile

also commonly viewed the profile of Defendant Vision IT Services." (Pl.'s St. Of

Undisputed Material Facts ¶ 29, Ex. D Segura Decl. ¶ 12; Ex. N.)

Finally, Mr. Segura's declaration provides evidence of an incident of actual

confusion:

> In 2005, Vision Information had a contract with Dell Computer Systems of
> Round Rock, Texas. We did not get paid and reached out to Dell to find out the
> status of the payment. Dell told us it had sent a check to Vision IT in
> Farmington Hills, Michigan. We were eventually paid by Dell, but after a delay
> because Dell had to collect the money back from Vision IT.

(Segura Decl. ¶ 11.)

These examples are more than mere speculation. Plaintiff has shown one

instance of actual confusion, albeit approximately a decade ago, that occurred by

what was probably a sophisticated user of Plaintiff's services: Dell. The evidence of

initial-interest confusion also adds weight to this factor in favor of finding a likelihood

of confusion.

### 5.  Marketing Channels Used

Mr. Nimmigadda testified that Defendant Vision IT Services USA, Inc., does not

do any advertising but it does have a website; it does not post any job openings, it

looks for job openings. (Nimmigadda Dep. 20.) Yet there is overlap between the

parties' marketing channels in the use of the internet, in the form of website and in

search engine returns. *See Gen. Motors Corp. v. Keystone Auto. Indus., Inc.*, 453

F.3d 351, 357 (6th Cir. 2006) ("There is less likelihood of confusion 'if the services

of one party are sold through different marketing media in a different marketing

18

context than those of another seller.'" Citation omitted.). This factor weighs slightly in favor of a finding of likelihood of confusion.

### 6.  Likely Degree of Purchaser Care

Neither party provided evidence of the degree of purchaser care. However, "confusingly similar marks may lead a purchaser who is extremely careful and knowledgeable about the [goods] he is buying to assume nonetheless that the seller is affiliated with or identical to the other party." *Daddy's Junky Music Stores, Inc.*,109 F.3d at 286 (citations omitted). This factor is neutral.

### 7.  Intent of Defendant In Selecting The Mark

Plaintiff states that it is willing the accept that Defendants deny any intent to infringe in selecting this mark. (Pl.'s Mot. 20.) Plaintiff correctly argues that the absence of intent makes this factor neutral. *See Daddy's Junky Music Stores, Inc.*, 109 F.3d at 287.

### 8.  Likelihood of Expansion Of Product Lines

Plaintiff has shown that it intends to keep growing. Plaintiff's founder and CEO stated in his declaration that "Vision Information intends to expand its services in the State of Michigan and across the United States." (Segura Decl. ¶ 4.)  In October 2014, Plaintiff formed three wholly-owned subsidiaries that have licensed the VISIONIT trademark. (Segura Decl. ¶ 10.) "[A] 'strong possibility' that either party will expand his business to compete with the other or be marketed to the same consumers will weigh in favor of finding that the present use is infringing." *Daddy's*

19

*Junky Music Stores, Inc.,* 109 F.3d at 287 (citation omitted). This factor favors finding a likelihood of confusion.

The factors set forth above weigh in favor of finding a likelihood of confusion between Plaintiff's mark and Defendants' use of the similar name. Plaintiff has demonstrated that Defendants' use of the name/mark Vision IT Services USA, Inc. creates an actionable likelihood of confusion.

### C. Plaintiff's Remaining Unfair Competition and Common Law Claims

The remaining claims for unfair competition and false designation of origin under 15 U.S.C. § 1125(a), and similar common law claims require proof of a likelihood of confusion mirroring the previously discussed claim. *See Daddy's Junky Music Stores, Inc.*, 109 F.3d at 288; *see also Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504 (6th Cir. 2007) (The success of an unfair competition claim requires a showing that the alleged infringer's actions created a likelihood of confusion.).

> [T]he requirements necessary to make out a claim for infringement under 15 U.S.C. § 1125(a) [are] as follows: (1) ownership of a specific service mark in connection with specific services; (2) continuous use of the service mark; (3) establishment of secondary meaning if the mark is descriptive; and (4) a likelihood of confusion amongst consumers due to the contemporaneous use of the parties' service marks in connection with the parties' respective services.

*Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991). For the reasons set forth above, the Court finds that Plaintiff prevails on these remaining claims, as well.

20

## IV.   CONCLUSION

For the reasons set forth above the Court DENIES Defendants' Motion For Summary Judgment [dkt. no. 18] to the extent Defendants seek dismissal of Plaintiff's claims, yet finds that Defendants may present evidence of laches on the issue of damages.

The Court GRANTS Plaintiff's motion for partial summary judgment on liability [dkt. no. 15], finding in favor of Plaintiff on all counts for liability.

s/ Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  January 12, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 12, 2016, by electronic and/or ordinary mail.

s/Carol J. Bethel

Case Manager